UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DARREN SMITH,<br><br>      Plaintiff,<br><br> v.<br><br>CITY OF QUINCY; WILLIAM GONZALES; and SCOTT JONES,<br><br>      Defendants. | NO: CV-09-328-RMP<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

  Before the Court is Defendants' Motion for Summary Judgment (Ct. Rec. 24). Defendants request that the Court dismiss Plaintiff Darren Smith's claim for violation of civil rights under 42 U.S.C. § 1983, as well as his claim of termination in violation of public policy. Defendants request that the remaining state claims be remanded to state court.

  Plaintiff is a former Quincy police officer complaining of (1) wrongful termination in violation of public policy, (2) breach of promise of specific treatment in specific circumstances, (3) defamation, and (4) violation of civil rights in violation of 42 U.S.C. § 1983 (Ct. Rec. 1). Under § 1983, Plaintiff claims that

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

he was deprived of his right to free speech under the First Amendment because Defendants retaliated against him for his statements connected with union activity, tried to force him to alter a "use of force" form, retaliated for his statements regarding safety issues and his public information requests (Ct. Rec. 1 at 7). Plaintiff also claims that he was deprived of his liberty interest and/or property interest without due process as afforded by the fourteenth amendment (Ct. Rec. 1 at 7).

This Court has jurisdiction pursuant to 28 U.S.C § 1331 and can exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## Background

### A. Union Activity

Officer Smith was hired by the Quincy police department as a provisional officer on February 9, 2007 (Ct. Rec. 25 at 1). On March 15, 2007, he became a patrolman with the department (Ct. Rec. 25 at 2). In the fall of 2007, Officer Smith began having conflict with his departmental supervisor, Sergeant Scott Jones. On approximately October 19, 2007, at a private union meeting, Officer Smith and other officers questioned the transparency of the selection process for the next sergeant (Ct. Rec. 57-2 at 36). Officer Smith alleges that Sgt. Jones

"raised his voice and became a bit argumentative" in response to the officers' position on certain issues (Ct. Rec. 57-2 at 36).

### B.  Use of Force Form

One of the underlying events at issue is an allegation that Sgt. Jones retaliated against Officer Smith for an erroneous completion of a "use of force form."  The use of force event occurred on September 30, 2007, and Officer Smith filed the report on October 1, 2007 (Ct. Rec. 57-1 at 20).  On October 20, 2007, after reviewing Officer Smith's use of force report regarding this incident, Sgt. Jones emailed the Taser instructor of the department, Officer Dan Dopps, who had signed off on the report (Ct. Rec. 57-1 at 28).

Officer Smith alleges that the retaliation began when Sgt. Jones noted that Officer Dopps' report stated that he had reviewed some training issues with Officer Smith and asked Officer Dopps for a brief memo outlining what was discussed with Officer Smith (Ct. Rec. 57-1 at 28).  On October 30, 2007, Sgt. Jones sent another email to Officer Dopps regarding an omission in the use of force report. Sgt. Jones noted that Officer Smith had failed to check a box on the form and requested that Officer Smith check the box under the heading of "suspect actions" (Ct. Rec. 57-2 at 32).   Instead, Officer Smith created his own box and wrote in "non compliance [sic] with orders" next to it (Ct. Rec. 57-2 at 32).

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

While stating that the issue was not major, Sgt. Jones then asked Officer Dopps via email to review with Officer Smith how to properly complete the form including actually checking the appropriate box (Ct. Rec. 57-2 at 32). Sgt. Jones copied Officer Smith on his email. Officer Smith responded via email shortly afterward stating that he needed no further education on how to fill out the use of force form and accusing Sgt. Jones of asking him to change material facts in a report and perjure himself (Ct. Rec. 57-2 at 32).

Within minutes several in person comments were exchanged between Sgt. Jones and Officer Smith Ct. Rec. 57-2 at 36). Sgt. Jones allegedly questioned whether Officer Smith really enjoyed working for the department (Ct. Rec. 57-2 at 36). Officer Smith stated that he did enjoy working for the department but that he objected to Sgt. Jones' tone and then Officer Smith announced that "this conversation is over" (Ct. Rec. 57-2 at 36).

### C. Safety Complaints and Suggestions

Another conflict between Sgt. Jones and Officer Smith occurred when Sgt. Jones issued a directive to remove shotguns from patrol cars at the end of shifts (Ct. Rec. 57-1 at 23). Officer Smith filed an objection to the new directive (Ct. Rec. 57-1 at 25). Officer Smith alleges that in December, 2007, a fellow department employee invited Officer Smith also to submit safety concerns and suggestions to the Safety Committee for the City of Quincy, a committee that

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

included a police department representative and which reported back to Chief Gonzalez (Ct. Rec. 57 at 6). Officer Smith submitted a series of complaints and suggestions to the Safety Committee:

- On December 27, 2007, he requested snow tires for all patrol vehicles (Ct. Rec. 57-2 at 39);
- On December 29, 2007, he complained about removing shotguns from patrol cars at the end of shifts (Ct. Rec. 57-2 at 44);
- On January 3, 2008, he complained about unsecured doors and windows in the department (Ct. Rec. 27 at 20);
- On January 6, 2008, he requested a secure and fenced parking area for the patrol vehicles (Ct. Rec. 57-3 at 56); and
- On January 8, 2008, he expressed his concern about the police department's reckless press releases (Ct. Rec. 57 at 7).

Some of Officer Smith's suggestions were accepted by the Safety Committee and others were rejected (Ct. Rec. 57-3 at 60-69). On January 11, 2008, Officer Dopps sent an email to the department expressing that Chief William Gonzales felt blindsided by "person(s) outside the department on issues that should have been addressed first by the Chief" and requesting department members to bring their concerns or issues through the chain of command before going outside the department (Ct. Rec. 57-3 at 71).

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

### D. Claims of Unprofessionalism and Resignation

Conflict occurred again on March 6, 2008, when Officer Smith sent an email to Officer Dopps and Sgt. Jones expressing concern about a blown tire on a patrol car (Ct. Rec. 57-4 at 74). Sgt. Jones and Officer Smith then exchanged emails in which they accused each other of being unprofessional (Ct. Rec. 57-4 at 73).

As a result of the March 2008 conflict, Sgt. Jones scheduled a meeting with Officer Smith to discuss and resolve issues (Ct. Rec. 57-4 at 76). Sgt. Jones stated that the meeting was not disciplinary, but was meant to avoid discipline (Ct. Rec. 57-4 at 76). Sgt. Jones expressed a desire to try to depolarize their relationship and discuss issues in an informal low-key environment (Ct. Rec. 57-4 at 76). Sgt. Jones also referenced what appears to be the Quincy Police Department's Standard Operating Procedures manual that requires employee concerns to be brought first internally before seeking higher review (Ct. Rec. 57-4 at 78). On the day of the meeting, Officer Smith brought a union member with him to the meeting and alleges that Sgt. Jones became hostile and terminated the meeting (Ct. Rec. 57 at 10).

On March 17, 2008, Officer Smith submitted a letter of resignation stating that "the working environment resident within the department has become something that I can no longer accept" (Ct. Rec. 57-4 at 80). Sometime after this

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

date, Officer Smith met with the mayor of Quincy. On April 4, 2008, he sent the mayor a letter stating that he would rescind his letter of resignation under the conditions that (1) Sgt. Jones cease retaliatory action against him, and (2) the city adopt, in substantial form, a whistleblower policy provided by Officer Smith (Ct. Rec. 57-4 at 82). Rather than allowing Officer Smith to rescind, the city accepted his resignation (Ct. Rec. 26 at 2).

### E. Post Resignation

More than a half of a year after leaving his employment at the City of Quincy and while employed as an officer of the Grant County Sheriff's Office, Officer Smith personally served the City of Quincy with public records requests relating to his previously filed safety concerns (Ct. Rec. 57 at 10). That same day, Chief Gonzales issued a memo to all personnel stating that he felt that Darren Smith's "presence causes an uncomfortable environment and a safety issue for my personnel" and directing that "he is to go no further than the information window of our office and not behind any locked doors" (Ct. Rec. 57-4 at 85).

## Applicable Law

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A key purpose of

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U .S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). Furthermore, the court will not presume missing facts and non-specific facts in affidavits are not sufficient to support or undermine a claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## Discussion

### 1. First Amendment Claim

Officer Smith claims that his civil rights were violated when Defendants deprived him of his right to free speech. Specifically, Officer Smith claims that he was retaliated against for questioning the transparency of the selection process for the next sergeant, his completion of the use of force form, his reporting of safety issues, and his public information requests (Ct. Rec. 57-2 at 36; Ct. Rec. 54 at 2).

The parties agree on the applicable law and both cite *Eng v. Cooley*, 552 F.3d 1062 (9th Cir.2009), as support. *Cooley* states:

> It is well settled that the state may not abuse its position as employer to stifle "the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Acknowledging the limits on the state's ability to silence its employees, the Supreme Court has explained that "the problem in any case is to arrive at a balance between the interests of the public employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id*.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

> In the forty years since *Pickering*, First Amendment retaliation law has evolved dramatically, if sometimes inconsistently. Unraveling *Pickering's* tangled history reveals a sequential five-step series of questions: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

*Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir.2009).

### a. Whether Speech Is a Matter of Public Concern

Speech involves a matter of public concern when it can fairly be considered to relate to any matter of political, social, or other concern to the community. *Johnson v. Multnomah County, Or.*, 48 F.3d 420, 422 (9th Cir.1995) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). However, "speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern." *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir.2003). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Johnson*, 48 F.3d at 422.

The Plaintiff has the burden of showing that the speech addressed an issue of public concern. *Eng v. Cooley*, 552 F.3d 1062 (9th Cir.2009). The Ninth Circuit

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 10

has defined the scope of public concern broadly and adapted a liberal construction of what an issue of public concern is under the First Amendment. *Desrochers v. City of San Bernardino,* 572 F.3d 703, 710 (9th Cir. 2009). Still, speech concerning government inefficiency does not automatically receive First Amendment protection; rather the focus must be whether the public or community is likely to be truly interested in the particular speech. *Id.* at 713.

Defendants classify all of Smith's complaints as related to his working conditions: Sgt. Jones' allegedly raising his voice at Officer Smith when he questioned the fairness of the selection of the next sergeant; Sgt. Jones' questioning of Officer Smith's completion of the use of force form; Officer Smith's filing of safety suggestions and complaints; and Officer Smith's objections regarding safety issues (Ct. Rec. 26 at 7).

Officer Smith argues that the selection of the next sergeant and the safety issues were matters of public concern. Officer Smith emphasizes that the safety issues were directed to the Safety committee that was compromised of representatives of department employees and city employees, and therefore the Court should consider the safety issues, at a minimum, to be speech of public concern.

The Court finds that the majority of Plaintiff's complaints appear to be the result of personality conflicts and possibly an internal power struggle between

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 11

Officer Smith and Sgt. Jones.  However, arguably some of Smith's issues could be deemed as matters of public concern:  most notably, Officer Smith's complaint regarding the removal of shotguns from patrol cars and the inadequate storage facilities (Ct. Rec. 27 at 9).  This could be construed as a matter of public concern because it could present a potential danger to the officers and a potentially slower officer response time to an emergency.  In support of this position, it is significant that the Safety committee adopted some of Smith's suggestions (Ct. Rec. 27 at 12).

Therefore, viewing the evidence in the light most favorable to the Plaintiff, it appears that at least Officer Smith's speech regarding safety issues could be construed as addressing issues of public concern.

### b. Whether The Plaintiff Spoke As a Private Citizen or Public Employee

Second, the Plaintiff bears the burden of showing that the speech was spoken in the capacity of a private citizen and not a public employee. *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009).

> Speech which owes its existence to an employee's professional responsibilities is not protected by the First Amendment. Additionally, if the public employee was paid for the speech--e.g., drafting a memorandum, creating a report, advising a supervisor--then that compensation might be indicative of the nature of the speech.  An adverse employment action for this type of speech does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Huppert v. City of Pittsburg*, 574 F.3d 696, 704 (9th Cir. 2009).

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

A court must take a "practical look" beyond the job descriptions to the duties that the employee actually performs. *Id.* at 704. "Speech which has no official significance and bears similarities to actions taken by numerous citizens everyday falls outside the ambit of an employee's job duties and would be protected by the First Amendment." *Id.* at 704.

> In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.

*Johnson v. Multnomah County*, Or., 48 F.3d 420, 425 (9th Cir. 1995).

An "employee's motivation and the chosen audience are among the many factors to be considered" by the court. *Id.* Although not dispositive, a limited audience weighs against the claim of protected speech. *Roe v. City and County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997).

Defendants contend that Officer Smith's speech was that of a public employee: internal employee grievances and workplace suggestions. In addition, Defendants note that Smith's limited audience and the fact that the public was never made aware of Smith's concerns supports the conclusion that Smith's speech was made in his role as a public employee.

Officer Smith relies on a California state court definition of an officer's duties to support that his speech was outside his official duties of a police officer.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

*Huppert v. City of Pittsburg*, 574 F.3d 696, 705 (9th Cir. 2009). Officer Smith also relies on *Huppert* to argue that making complaints and suggestions to the Safety committee falls outside of the "chain of command" and therefore is not encompassed by a police officer's duties. However, *Huppert* does not stand for this proposition. The language in *Huppert* regarding "chain of command" argument is merely a dicta discussion of a Fifth Circuit case. The Court finds Smith's reliance on *Huppert* unpersuasive.

*Huppert* did analyze two Ninth Circuit cases that addressed whether an employee's speech was pursuant to his official duties, or alternatively, private speech. In *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006),

> [The court] examined multiple different complaints by Freitag, a female prison guard, regarding sexual harassment by male prisoners. [It] held that Freitag's reports of sexual harassment, complaints to her superiors within the prison system, and documentation of the prison system's response to her complaints were all examples of unprotected speech. On the other hand, with regard to her communication outside the prison system to her state senator and the appointed inspector general, [the court found] it clear that [those] communications [were] protected under the First Amendment.

*Huppert,* 574 F.3d at 704-5. In contrast, in *Marable v. Nitchman*, 511 F.3d 924 (9th Cir.2007), the Ninth Circuit found that a complaint by Marable, an engineer for the Washington State Ferries, alleging high-level corruption and mismanagement of funds, was outside a ferry-worker's job duties and therefore private, protected speech. *Huppert,* 574 F.3d at 705.

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

Three significant facts support the view that all of Officer Smith's safety concern speech was that of a public employee regarding his own private concerns: (1) the timing of Officer Smith's numerous filings occurred shortly after his conflict with Sgt. Jones (all within fall and early winter of 2007), see *Johnson v. Multnomah County*, Or., 48 F.3d 420, 425 (9th Cir. 1995); (2) most of Officer Smith's statements touched on issues relating to Smith's employment as an officer and were signed by him in his capacity as an officer and marked confidential, see Ct. Rec. 5702 43-54[1]; and (3) Officer Smith's audience was the Safety Board, a limited audience comprised of members both inside and outside the Quincy police department who make recommendations to Chief Gonzales. *See Roe v. City and County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997). For these reasons, the Court concludes that Smith's statements and suggestions were internal communications made by a public employee. See *Huppert v. City of Pittsburg*, 574 F.3d 696, 704 (9th Cir. 2009) (stating a court is to make a "practical look" beyond the job descriptions to the duties the employee actually performs).

---

[1] An "employee's motivation and the chosen audience are among the many factors to be considered" by the court. *Id.* Although not dispositive, a limited audience weighs against his claim of protected speech. *Roe v. City and County of San Francisco*, 109 F.3d 578, 585 (9th Cir. 1997).

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

The Court also is persuaded that Officer Smith's statements made at the private union meeting about the internal selection process of the next sergeant is employment related speech by a public employee. See *Johnson v. Multnomah County*, Or., 48 F.3d 420, 425 (9th Cir. 1995). Similarly, the argument between Officer Smith and Sgt. Jones about the proper way to complete a use of force report is employment related speech by a public employee.

The Court concludes that in all of the statements at issue in this case that Smith spoke as an aggrieved public employee rather than as a private citizen about public concerns. Because the Court concludes that Smith was not speaking as a private citizen about public concerns, the First Amendment retaliation inquiry stops. The Court finds that Defendants did not violate Smith's First Amendment rights based on statements that Smith made while employed by Defendants. See *Desrochers v. City of San Bernardino,* 572 F.3d 703, 709 (9th Cir. 2009).

### e.  Actions After Resignation

Officer Smith relies on *Blair v. Bethel School Dist.*, 608 F.3d 540, 543 (9th Cir. 2010), to argue that Chief Gonzales' decision to limit Officer Smith's access to the Quincy police department back room after Smith resigned from his employment also violated Smith's First Amendment rights. However, as Defendants point out, Smith's argument has a causation flaw. Smith was barred from the back room of the police station six months after he resigned. No

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

retaliatory action could have occurred because Smith was no longer employed by the City of Quincy.

The plaintiff in *Bethel School Dist*. brought a retaliation suit for exercising his First Amendment rights, because he was removed from a board *after* criticizing a superintendent. *Id.* at 543. Defendants argue that a party does not have a viable First Amendment retaliatory claim for actions that occur after termination. In addition, at least one court has found that a complaint filed a month after a plaintiff's termination could not be the basis for a retaliatory action because there is no causal connection between the protected activity and any adverse action by the defendants. *See Calhoun v. Liberty Northwest Ins. Corp.*, 789 F.Supp. 1540, 1548 (W.D.Wash. 1992).

The Court finds that Chief Gonzales' decision to ban Officer Smith from the back room over six months after Smith resigned from employment by the City of Quincy and when Smith already was employed by Grant County is not a sufficient factual basis on which to prove retaliation for the exercise of First Amendment rights.

**2. Deprivation of Property/Liberty Interest**

Officer Smith also argues that his §1983 claim is supported by a violation of his Fourteenth Amendment Due Process rights when Chief Gonzales issued the memo that banned Officer Smith from the back room of the police station. Officer

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

Smith concedes that an injury to one's reputation is not actionable without a violation of a federally recognized right. A case cited by Officer Smith, *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991), states that an "injury to reputation is not a liberty or property interest protected by the due process clause of the Fourteenth Amendment, and therefore this injury alone does not present an actionable claim under section 1983."

Furthermore, as Defendants argue, a protected liberty interest is violated only if the violation effectively precludes future work in the individual's chosen profession. *Merritt v. Mackey*, 827 F.2d 1368, 1373 (9th Cir. 1987). This was not the case for Officer Smith who was employed at the Grant County Sheriff's Office a short-time after he left the Quincy police department, and who remained employed with Grant County even after the memo was posted banning him from the backroom.

Therefore, the Court concludes that Plaintiff Smith suffered no violation of Constitutional rights by Defendants. As a result, Plaintiff has failed to support a prima facie case for claims under 42 U.S.C. § 1983.

### 3. Termination in Violation of Public Policy

Defendants also have moved for dismissal of Officer Smith's violation of public policy claim which is based in state law. Officer Smith has alleged violations of public policy in addition to violations of his First and Fourteenth

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

Amendment claims (Ct. Rec. 54 at 17). As the violation of public policy claim is based in state law, the Court finds that the determination of that claim is better suited for a state court.

## Conclusion

The Court concludes that Officer Smith has failed to provide sufficient evidence to survive summary judgment on his 42 U.S.C. §1983 claims. The Court grants Defendants' motion to dismiss Plaintiff's 42 U.S.C. §1983 claims. Without those federal claims to support 28 U.S.C. § 1331, this Court loses subject matter jurisdiction and will not assert supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).

## Other Pending Motions

Currently, there are other pending motions before this Court including (1) Defendants' Second Motion to Compel Testimony from Aaron Doyle (Ct. Rec. 106), and (2) Defendants' Motion to Compel Aaron Doyle to Sign Release of Transcripts (Ct. Rec. 110). Given the Court's decision not to assert supplemental jurisdiction in this case, and given that the sealed status of Mr. Doyle's California records are being considered currently by a California court, this Court declines to rule on the pending Doyle motions. Accordingly,

IT IS ORDERED:

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

1. Defendants' Motion for Summary Judgment (**Ct. Rec. 24**) is **GRANTED IN PART AND DENIED IN PART** as outlined above.

2. The Court declines to exercise supplemental jurisdiction on the remaining state law claims. 28 U.S.C. § 1367(c)(3).

3. All other pending motions are **DENIED AS MOOT**.

The District Court Executive is directed to file this Order, provide copies to counsel, and **close this case**.

**DATED** this 11th day of February 2011.

<i>s/ Rosanna Malouf Peterson</i><br>
ROSANNA MALOUF PETERSON<br>
United States District Court Judge